## GREGG COMPANY, LTD., Plff.,

*v.*

## UTUADO SUGAR COMPANY, Dft.

San Juan, Equity, No. 898.

ON EXCEPTIONS TO MASTER'S REPORT REGARDING CLAIM OF LUIS FELIPE IGLESIAS.

Receivership—Advances to Receiver.
    1. When the court authorizes a receiver to borrow money to keep a central in operation, it will protect the lender, if possible, as there is a high sense in which the obligation is a public one.

Receivership—Advances to Receiver—Administration Expenses.
    2. Money lent to a receiver under a court order to continue a central in operation which goes into the operation of the plant is an administration debt of the receiver, and is not a common debt.

---

NOTE—As to priority of claim for money advanced to receiver, see notes in 2 L.R.A.(N.S.) 1044; 41 L.R.A.(N.S.) 701.

Gregg Co. v. Utuado Sugar Co.

Receivership—Receivers' Contracts—Administration Expenses.
>3. It is not what a receiver contracts which binds the receivership assets, but what is actually used for the benefit of the property.

Opinion filed July 21, 1915.

———

*Mr. Alvarez Nava & Dominguez* for Iglesias.

*Mr. Chas. Hartzell* for certain creditors.

*Mr. C. Coll Cuchi* for defendant company.

HAMILTON, Judge, delivered the following opinion:

This matter has been pending for some time upon the report of the standing master as to the position of Luis Felipe Iglesias. It has been continued from time to time at the convenience of the parties, and it now becomes necessary to pass upon it and dispose of it one way or another.

The case seems to be that of a claimant who loaned the receiver $30,000, the receiver acting under an order of court allowing him to borrow on receiver's certificates not exceeding $50,000. He, it seems, entered into what is called here a refaccion contract with Mr. Iglesias. Its terms are very stringent, and Mr. Iglesias received the benefit of those terms up to a certain date, when this court found that the receivership was running behind. On account of poor crop of cane and otherwise it was actually losing money by grinding, and, upon the request of all creditors except Iglesias, the court stopped the operation of the central and practically stopped

Gregg Co. v. Utuado Sugar Co.

all expenses except what were absolutely necessary to take care of the property. Iglesias claims that this act of the court prevented him from realizing on his contract with the court's receiver. He had already received about $15,000, and there remained about $15,000 to be taken care of upon Mr. Iglesias' theory.

The question is, what is the proper thing to do? The matter was referred to the master, and the master filed a report on December 7, 1914, but which was continued, as stated above, until it comes up for decision now. The master seems to criticize the execution and carrying out of the contract on the ground that it was usurious and had other objections, but upon the main issue comes to the conclusion that Iglesias, having made a refaccion contract which was limited by its terms to that year, and the crop of that year not paying out, Iglesias is without remedy, and recommends that he be considered simply as a general creditor, which, in the case of Utuado, is nearly the same as denying any remedy.

The question comes up upon Iglesias' exceptions to that report. Iglesias' theory seems to be that this was a contract with the court itself, and that the court in some way or other is bound to pay him when he has advanced the money; and, apparently, also, that it being a refaccion contract, the lien would go over to the next crop, so that the claim would not be wiped out until the money was finally paid. This brings up several considerations.

1. In the first place, he chose his own security. Iglesias made the security as stringent as the law allowed, and profited by that as long as there were any returns. The action of the court in stopping the grinding did not injure Iglesias legally

Gregg Co. v. Utuado Sugar Co.

in the slightest. The contract was with the receiver, and the conduct of the receivership must be with regard to the interests of the property at large; and if the result would be, as it was found it would be, that further grinding would be piling up expenses against the property, on the one hand, while it might be possible if all receipts were turned over to Iglesias it might pay his debt down, on the other, the duty of the court was clear, that it had to stop the expenses. So that at the most the action of the court was *damnum absque injuria* so far as Iglesias was concerned. The question, however, goes further than that one point. The master's idea is that Iglesias' remedy was confined to the contract which he had drawn, and that having failed, he is remediless.

2. In the second place, it is a matter deserving very serious consideration. The court appreciates to the fullest the argument that when it directs the receiver to borrow money, the contract stands on a different basis from ordinary contracts; and that the court should, if there is any way open, protect what is loaned on the strength of the court's name; that there is a high sense in which this is a public obligation, represented by the court. The matter has been given great consideration by me.

It seems to me that the solution of it is this: Iglesias has loaned money upon property in the hands of the court, and has selected certain security. That security has turned out inadequate, but the court does not think that abolishes the debt. If it was an ordinary loan for a thousand dollars secured by United States bonds, or by any bonds, and it turns out that the security or title is bad, that does not abolish the note or loan at all; that is still outstanding. The question is, what

Gregg Co. v. Utuado Sugar Co.

sort of a debt is it after the particular security is taken away? Does it become a common debt? It cannot be a common debt, because it never was a common debt. It is, so far as the money went into the operation of the plant, an administration debt of the receiver, and has whatever protection is allowed administration expenses. Of course, it is conceivable that property may be so worthless as not even to pay the administration expenses, but that is not to be assumed, and does not seem to be the case here. So that the conclusion of the court is that the exception to the master's report, that this is simply a common debt with the rank of the ordinary debts of the corporation, must be sustained. It is an administration debt, and it must be protected as other administration debts.

3. In the third place, how can it be protected? There are one or two things to be considered. First, just as a common contract, it is not necessarily to be protected to its full extent. It is not what the receiver contracts that binds the assets, but what money the receiver gets that is actually used for the benefit of the property. If the receiver has received this money, for instance, and it has not gone into the operation of the property, it would be a question to that extent to be looked at in connection with the receiver's bond. He would have done something that he had no right to do. The court does not mean to say for a moment that that is the case, but simply by way of illustration. All the receiver simply borrows does not bind the estate. It is not an administration expense unless it goes into the administration. Whether all of this went into the administration is not shown by the report. What it was used for, or how much of it was so used, is not shown. If it went

Gregg Co. v. Utuado Sugar Co.

into some payment of common debts or otherwise, it might not have very high rank.

Furthermore, if, as the master seems to intimate, there was anything wrong, like usury in the contract, the court could not to that extent regard the transaction as an administration contract. These are questions that have not been reported so fully that a decree can be finally entered.

It seems, therefore, that the proper course would be to sustain the exception of Iglesias to the master's report, and to re-refer the matter to the master, to hear and report as follows: State an account showing how much money the receiver received from Iglesias under this contract, how much of this went into the actual administration of the receivership, how much has been repaid from the operation of the central by the receiver, disallow everything which is in any way illegal, whether it is usurious, or on any other account. The court certainly did not make a contract which was to be kin to anything illegal. The the master will credit all payments, and report the result as an administration debt. As to the rank of it compared with other claims, that is a separate question, which the master must report on in connection with the general reference to him as to priorities of all claims against Utuado. The master will therefore make a special report upon this claim, and conform this report to his general report on classification, filed June 30, 1915. In other words, it will be in the nature of a supplement to his report of June 30th, and state how this claim, as reformed above, is to rank in connection with other claims mentioned in that report.